**VIRGINIA:**

**IN THE FEDERAL DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| JIMMY MAKENI BANGURA )<br><br>Plaintiff )<br><br>v. )<br><br>J.W. MARRIOTT HOTELS )<br>10400 Fernwood Road )<br> Bethesda, MD 20817 )<br><br>Defendants. )<br>_____ ) | Case No. *1:12CV 874-AJT/IDD* |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Jimmy Makeni Bangura, by and through his undersigned counsel, Abu Kalokoh Eq., hereby complains against the Defendants, J.W. Marriott, as follows:

**STATEMENT OF CLAIM**

1.  This is an action to vindicate violations of the Plaintiff's civil rights and to redress the unlawful and discriminatory conduct and employment practices of the Defendant. This action arises out of the illegal and wrongful discharge of Mr. Jimmy Makeni Bangura on or about September 16, 2010. Mr. Bangura alleges, inter alia, that he was terminated from his employment based, in whole or in part, upon his national origin and/or race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq., and the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981.

2.  Beginning on or about May 13, 2004, Jimmy Makeni Bangura, a male U.S. citizen of African descent from Sierra Leone, was employed at the J.W. Marriott Hotel in Washington, DC. During his several years of employment with Defendant J.W. Marriott, Plaintiff Bangura, performed his duties in a professional and outstanding manner.

3.  In or around August of 2010, the J.W. Marriott Hotel where Mr. Bangura worked conducted an investigation into alleged horseplay at work and misconduct at its facility located at 775 12th Street N .W. Washington D.C 20005 and particularly in its Banquets Department, where Mr. Bangura was employed. The investigation was the direct consequence of complaints made by Mr. Bangura that a fellow employee, named Carlton

1

Hilliard, hit him on the back of his neck whilst both employees were at work, thereby causing him to experience excessive pain and injury.

4. On August 31, 2010, Mr. Bangura was suspended from work, without pay, whilst the matter was being investigated. Carlton Hilliard, against whom the Plaintiff made a complaint of violence at work was not suspended. He remained at work, whilst Plaintiff was sent home, pending investigation of Plaintiff's complaint.

5. Although J.W. Marriott's investigation revealed that Plaintiff's complaint of violence perpetrated against him by a co-worker was well founded and allegations of horseplay at work against Mr. Bangura were false and improperly motivated, Defendant J.W. Marriott terminated Mr. Bangura's employment on or about September 16, 2010.

6. On information and belief, Defendant J.W. Marriott did not terminate, or in any way discipline, the other party (Carlton Hilliard, who was also an employee) as a result of the investigation despite actual or constructive knowledge of his violations of company policy. Mr. Bangura thereafter filed a timely appeal with management. Mr. Bangura was asked to attend a peer review session regarding his appeal.

7. Mr. Bangura alleges that Defendant J.W. Marriott's investigation, the subsequent disciplinary action and termination, and the appeals process in particular, were tainted, biased and/or implemented in a discriminatory manner. As a result of the Defendants' unlawful and discriminatory conduct and employment practices and violations of Plaintiff's rights protected by federal law, Mr. Bangura was discharged from his employment on or about September 16 2010. Defendants' wrongful conduct denied him a fair appeal and hearing as guaranteed by Defendant Marriott's stated employment practices and policies.

8. Plaintiff now seeks injunctive relief; monetary damages, including back pay, front pay, if applicable, compensatory and punitive damages; and attorney's fees and costs, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.; the Civil Rights Act of 1866, as amended, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A and 42 U.S.C. Section 1988.

## PARTIES

9. Plaintiff, Jimmy Makeni Bangura is an adult male individual and citizen of the United States of African descent who resides at 4627 Southland Avenue, Apt. 204, Alexandria, VA 22312. At all relevant times, Mr. Bangura was an employee of the J.W. Marriott Hotels, within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq., and applicable case law.

10. Defendant, J.W. Marriott Company [herein referred to as Marriott], is a corporation or similar business entity organized and existing under the laws of the State of Maryland, and which regularly conducts business at the Marriott Hotel in Washington, D.C. and the state of Virginia

2

11. At all relevant times, Defendant employed in excess of fifteen employees and was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.

## JURISDICTION AND VENUE

12. This is, in part, an action authorized and instituted pursuant to: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A; 42 U.S.C. Section 1988

13. The jurisdiction of this Court is predicated upon 28 U.S.C. Section 1331 and 1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. The Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202 relating to declaratory judgments. This Court may also exercise pendant jurisdiction over Plaintiff's state law claims arising under the common law and statutes of the State of Virginia, and which arise from a common nucleus of operative fact pursuant to 28 U.S.C. Section 1367.

## ADMINISTRATIVE PREREQUISITES

10. Mr. Bangura has complied with all the administrative prerequisites to action under Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5 as follows:

   a) On or about December 13, 2010, Mr. Bangura timely filed a formal charge of discrimination with the Equal Employment Opportunities Commission [hereinafter referred to as EEOC]

   b) Mr. Bangura promptly and diligently accommodated all E.E.O.C. requests for information and fully cooperated in the agency's investigation of this matter;

   c) Mr. Bangura has exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this Civil Action, and the EEOC on May 8, 2012 advised Plaintiff of his right to file a suit in state or federal court within 90 days of receiving its Notice. No administrative prerequisites are required before a Plaintiff files a complaint pursuant to the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981.

## FACTUAL ALLEGATIONS

14. Plaintiff, Jimmy Makeni Bangura, was employed by Defendant J.W. Marriott on or about May 13, 2004 and worked at the J.W. Marriott Hotel located at 775 12th Street N.W., Washington D, C 20005.

15. At all relevant times, Defendant Marriott employed in excess of fifteen (15) employees for at least twenty (20) calendar weeks in 2008, 2009 and 2010, and was further engaged in an industry directly affecting interstate commerce.

16. At all relevant times, all matters regarding compensation, terms, conditions, rights and privileges of Mr. Bangura's employment were governed and controlled by Defendant J.W. Marriott.

17. At all relevant times, Mr. Bangura fully, adequately and completely performed all of the functions, duties and responsibilities of his employment with Defendant Marriott.

18. Mr. Bangura has a history and record of regular salary increases and bonuses.

19. At all relevant times, Carlton Hilliard was employed by Defendant J.W. Marriott's hotel located at 775 12th Street N .W., Washington D.C. 20005 in the Banquets Department.

20. In or around August, 2010, Plaintiff reported that his co-employee named Carlton Hilliard hit him violently on the back of his neck whilst at work. The incident took place on August 25, 2010.

21. Upon information and belief and at all relevant times, Carlton Hilliard who assaulted Plaintiff at work and was acting as the agent, servant and/or employee of Defendant J.W. Marriott. Defendant Marriott is therefore liable for the acts and omissions of that individual pursuant to the principals of ratification, respondeat superior and actual and/or implied agency.

22. Defendant J.W. Marriott has a policy regarding workplace violence. Pursuant to the Marriott Employment Manual, workplace violence consists of and is limited to threatened or actual infliction of harm against co-workers, visitors, and or guests.

23. Upon information and belief and as set forth herein, Defendant Marriott applies this policy in a manner that discriminates against its employees on the basis of race, and/or national origin.

24. Plaintiff's complaints of violence perpetrated against him were credible and involved violations of company policy.

25. In response to the Plaintiff's complaints against Carlton Hilliard Defendant J.W. Marriott failed, through its management staff, to initiate an unbiased investigation into Plaintiff's complaint.

26. During the ensuing investigation, Defendant Marriott suspended the Plaintiff from work, yet kept his aggressor, Carlton Hilliard on the job. All through the investigation. Carlton Hilliard went to work for Defendant Marriott, whilst Plaintiff was required to stay home.

27. During the course of its investigation, Plaintiff reported to Defendant Marriott, through his supervisor that the pain on his neck had intensified and that he had gone to see his physician. Defendant Marriott did nothing to address Plaintiff's concerns and/or medical condition.

28. Upon information and belief, J.W. Marriott did not suspend, terminate or in any way discipline Carlton Hilliard even though the latter had violated company policy.

29. On or about September 16, 2010, J.W. Marriott terminated Mr. Bangura from his employment after a biased investigation was conducted pursuant to his complaint. The stated reason for Mr. Bangura discharge was: 'engaging in horseplay at work'

30. At all relevant times, Mr. Bangura vehemently denied any and all allegations of misconduct or horseplay at work.

31. Defendant, J.W. Marriott conducted the aforesaid investigation in such a manner so as to intimidate, embarrass and coerce Mr. Bangura into admitting wrongdoing as a pretense to get rid of him, considering that on February 28, 2009, Plaintiff was physically attacked on the job by another employee named Mike (an African American), injuring him. That incident was treated by Defendant J.W. Marriott as workplace injury. Though Defendant Marriott prevailed on Plaintiff to file a workman's compensation claim, which Defendant's insurance carrier ultimately settled by paying monetary compensation to the Plaintiff, Defendant Marriott failed to discipline Plaintiff's aggressor, in spite of the latter's violation of company policy.

32. Defendant, Marriott knew or should have known that Plaintiff had previously alleged violence at work perpetrated against him in 2009 by a co-employee who was not disciplined, even though Plaintiff's complaint was substantiated.

33. Given the foregoing facts, Plaintiff's employment was terminated on September 16, 2010 without any justification.

34. As set forth more fully herein, similarly situated American born employees were never disciplined, and or terminated, in spite of their violations of the company's policy aimed at deterring work place violence.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Defendant J.W. Marriott's Violation of Title VII's Prohibition Against Employment Discrimination-- Disparate Treatment**

35. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

36. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq., and 42 U.S.C. Section 1981A, for relief based upon the unlawful employment practices of the above-named Defendant. Specifically, Mr. Bangura complains of Defendant J.W. Marriott's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, national origin or by way of retaliation.

37. During his employment with Defendant Marriott, Mr. Bangura was a member of a class protected under Title VII against race based discrimination or discrimination based on national origin by his employer, Defendant Marriott, or by its supervisory personnel.

38. As set forth herein, as a result of its investigation of Plaintiff's complaint of violence against him, Defendant Marriott terminated the Plaintiff's employment who is a first generation African immigrant from Sierra Leone.

39. As set forth herein, during the course of its investigation, Defendant Marriott discovered that Carlton Hilliard had engaged in inappropriate (violent) behavior at work. Specifically, Plaintiff had complained that the aforesaid Carlton Hilliard hit him on his neck and caused him injury.

40. Carlton Hilliard, an African American, born in the United States, was not terminated, disciplined and/or otherwise reprimanded for his infractions of company policy. To the contrary, he was given special consideration, including, inter alia, flexible hours, the privilege to continue working with Defendant Marriot, whilst Plaintiff was suspended as his complaint was allegedly being investigated in his absence.

41. Defendant Marriott offered special consideration to its employees in general, and its U.S. born employees in particular, who were willing to cooperate in its investigation of violence at work, including waiving discipline for known infractions of company policy.

42. Mr. Bangura, as a first generation Immigrant employee from Sierra Leone, was therefore treated in a disparate manner and was subjected to Defendant's unfair policies and practices insofar as that he was treated in an unequal manner and unlike U.S. born employees similarly situated with the Defendant. Said unfair practices both limited Plaintiff in his wages and other benefits because of his race (African), national origin (from the country of Sierra Leone) and further resulted in his discharge from employment on or about September 16, 2010.

43. Defendant J.W. Marriott, further denied Mr.Bangura equal employment opportunities because of his national origin.

44. The reason given for Mr. Bangura's discharge was a mere pretext for unlawful discrimination in that Defendant Marriott knew or should have known that Mr. Bangura had been subjected to violence and bullying at work.

45. The Defendant did not discipline or discharge a similarly situated American born employee, Carlton Hilliard, in that said employee had resorted to violent behavior against a fellow employee at the workplace.

46. The alleged event of violence against the Plaintiff at work was a fact known or should have been known to Defendant Marriott, at the time of Mr. Bangura's discharge.

47. At all relevant times, Defendant Marriott knew that the discriminatory conduct complained of herein was without cause as Mr. Bangura had consistently satisfied and/or exceeded all the requirements of his position.

48. As a result of Defendant Marriott's employment policies, procedures and practices, Mr. Bangura was unjustly and discriminatorily deprived of equal employment opportunities because of his race, and, or national origin.

49. As a further result of Defendant Marriott's above stated actions, Mr. Bangura has been, is being and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to him as an employee, but denied because of his national origin and in an amount to be proven at trial.

50. The above-named Defendant's conduct was a direct and proximate cause of the injuries, damages and harm suffered by Mr. Bangura.

51. Furthermore, Defendant Marriott intentionally discriminated against Mr. Bangura, contrary to Mr. Bangura's federally protected rights as guaranteed to him under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Section 1981.

52. The intentional and discriminatory conduct of Defendant Marriott complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to Defendant and others who would commit similar illegal acts.

53. As Defendant Marriott engaged in discriminatory employment practices with malice or with reckless indifference to Mr. Bangura's federally protected rights, Mr. Bangura is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Section 1981A.

## SECOND CAUSE OF ACTION

### Defendant J.W. Marriott's Breach of Contract and/or Promissory Estoppel

54. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

55. Defendant Marriott's promulgated express and written statements of employment policies, practices and procedure which it provided and disseminated to all of its employees, including Mr. Bangura.

56. Defendant Marriott represented, both orally and in writing, that it would treat employees in a specific, fair and equitable manner. Specifically, Defendant Marriott promulgated a policy that discharged employees would be provided with a fair, impartial and unbiased process.

57. Defendant Marriott further represented, promised and/or implied both orally and in writing that an employee would only be discharged for cause, and after a reasonable investigation and opportunity to be heard.

58. The customary pattern and practice of Defendant Marriott was to follow its express and implied employment policies and practices, including the for cause and appeals process policies.

59. Furthermore, Defendant Marriott represented, promised and/or implied that it would investigate all allegations of workplace violence and misconduct by and against employees in a fair, impartial and nondiscriminatory manner.

60. Defendant promulgated these policies and procedures, and made these representations, in such a manner as to manifest its willingness to enter into a bargain with its employees, including Mr. Bangura.

61. Mr. Bangura assented to Defendant Marriott's offer regarding the employment policies and procedures by accepting employment and via oral representations in such a way as to conclude the bargain.

62. Mr. Bangura's initial and/or continued employment with Defendant Marriott constituted acceptance of and consideration for Defendant's offer.

63. Defendant Marriott breached its contract with Mr. Bangura by its failure to follow its own practices, policies and procedures with regard to the terms and conditions of Plaintiff's employment as set forth herein.

64. As set forth herein, Defendant Marriott intentionally, willfully and/or maliciously breached its contract with Plaintiff.

65. Moreover, Defendant Marriott expected and/or should have reasonably expected Mr. Bangura to rely on the aforementioned policies and procedures as a commitment by Defendant Marriott to follow and abide by them, including the for cause and appeals process policies.

66. At all relevant times, Mr. Bangura understood and reasonably relied on the aforementioned policies and procedures to his detriment and harm, both pecuniary and otherwise.

67. As set forth herein, Defendant Marriott did not follow the aforementioned employment practices, policies and procedures. Specifically, Mr. Bangura was not terminated for cause in that Defendant Marriott did not properly determine whether or not there was cause and Marriott did not follow its policies, practices and procedures with regard to the appeals process.

68. Substantial injustice can only be avoided by enforcing the promises made by Defendant Marriott to Mr.Bangura.

69. Defendant Marriott's breach of contract was a direct and proximate cause of the injuries, damages and harm suffered by Mr. Bangura and as set forth herein.

70. Defendant Marriott's conduct was willful and wanton, and Mr. Bangura is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under the common law.

## THIRD CAUSE OF ACTION

**Negligence**

71. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

72. Defendant Marriott owed and continues to owe a duty of care to third parties, and more particularly to their employees such as Mr. Bangura, to prevent their employees from acting in any way to harm co-employees

73. Defendant Marriott had a further duty to ensure that complaints of workplace violence were properly handled and the investigation conducted in a fair, impartial and/or non-discriminatory manner.

74. Defendant Marriott voluntarily contracted, promised and/or agreed and thereby assumed a legal duty to ensure that complaints of violence at work and misconduct were properly handled and the investigation conducted in a fair, impartial and/or non-discriminatory manner, pursuant to its express employment policies.

75. Defendant Marriott breached its duty of care owed to Mr. Bangura by and through the following acts and/or omissions, which include but are not limited to:

   a.) Failing to properly and adequately train its managerial employees, to properly respond to complaints of workplace violence;

b.) Failing to properly and adequately train its employees, so as to prohibit discriminatory employment practices, including discrimination based on race, and/or national origin;

c.) Failing to carefully and diligently supervise its employees, to prevent them from improperly handling complaints of workplace violence and/or conducting investigations pertaining to misconduct in a non-discriminatory manner;

d.) Failing to implement and/or take appropriate remedial action once it knew or should have known that its employees were engaged in violence at work and its management staff was mishandling complaints of violence and/or conducting the investigation in a discriminatory manner; and

e.) Failing to conduct a reasonable, proper and appropriate investigation.

f.)  Failing to abide by its own express and implied employment policies and procedures;

g.) Failing to exercise reasonable care under the circumstances.

76. The above-named Defendant's conduct was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff Bangura.

77.  Because the Defendants' conduct toward Mr. Bangura was improperly motivated, and was intentional, willful and wanton, Mr. Bangura is entitled to punitive exemplary damages in addition to compensatory damages.

## FOURTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

78. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

79. As set forth herein, during his employment with Defendant Marriott, Mr. Bangura was subjected to a pattern of discrimination and misconduct in the workplace based, in whole or in part, on his race, and/or national origin.

80. At all relevant times, the above-named Defendant knew or should have known that Plaintiff's complaints of violence against him at work were serious. Despite said knowledge, Defendant ignored the evidence and attempted to coerce and intimidate other employees into implicating Mr. Bangura in wrong-doing.

81. Despite actual and/or constructive knowledge that Plaintiff's complaints of violence against him were credible, Mr. Bangura was written-up and disciplined for alleged

infractions of company policy, and was terminated from his employment, despite being the victim.

82. The above-named Defendant, by falsely branding Mr. Bangura as someone engaged in horseplay at work and disciplining him for alleged infractions of company policy and subsequently terminating his employment, acted intentionally, recklessly and/or with deliberate indifference to a substantial probability that severe emotional distress would result to Mr. Bangura.

83. The above-named Defendant's actions towards Mr. Bangura as set forth above are evidence of a pattern of national origin discrimination and/or retaliation which further constitutes extreme and outrageous conduct.

84. The conduct of the above-named Defendant was outrageous in character and extreme in degree, because said conduct was atrocious and egregious, and went beyond all possible bounds of decency and is utterly intolerable in a civilized community.

85. The extreme and outrageous conduct of the above-named Defendant toward Mr. Bangura was done in a willful and wanton manner, and constituted a disregard for the rights and well-being of Mr. Bangura.

86. As a direct and proximate result of the above-named Defendant's extreme and outrageous conduct, Mr. Bangura suffered severe emotional distress.

87. Because the Defendants' extreme and outrageous conduct toward Mr. Bangura was improperly motivated, and was intentional, willful and wanton, Mr. Bangura is entitled to punitive/exemplary damages in addition to compensatory damages.

## DAMAGES

88. The conduct of the above-named Defendant, as set forth herein, in violating Mr. Bangura's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; caused injuries, damages and harm to Mr. Bangura, including, but not limited to, past and future economic loss, past and future non-economic losses, including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in the quality of life; and consequential losses.

WHEREFORE, Plaintiff Jimmy Makeni Bangura requests judgment and damages against Defendant, J.W. Marriott, as follows:

A.) Declaratory judgment that Defendants have violated Mr. Bangura's right to be free from discrimination in the workplace pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A;

B.) Enter an injunction ordering Defendant Marriott to make Plaintiff whole with full back pay, benefits and reinstatement to a position Mr. Bangura would have obtained in the absence of discrimination or, in the alternative, front pay.

C.) An award to Mr. Bangura for compensatory damages in amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life; and consequential loses;

D.) An award to Mr. Bangura for exemplary and/or punitive damages in an amount to be shown at trial;

E.) An award to Mr. Bangura for reasonable attorneys' fees and costs, including but not limited to expert witness fees, as provided in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-5(k), 42 U.S.C. Section 1981A, 42 U.S.C Section 1988 and as provided under state law;

F.) An award to Mr. Bangura of interest on any awards at the highest rate allowed by law; and

G.) Such other and further relief as this Court deems just and appropriate.


PLAINTIFF REQUESTS TRIAL TO A JURY ON ALL CLAIMS ALLOWED BY LAW

Respectfully submitted this 7th day of August, 2012

_____

JIMMY MAKENI BANGURA
By Counsel


_____

Abu Bakarr Kalokoh Esq.
4810 Beauregard Street, Suite 310
Alexandria, VA 22312
Phone: (703) 236-1806
e-Fax: (281) 664-3022
Counsel for Plaintiff